United States District Court
for the
District of Massachusetts
Civil Action No. 1:24-cv-12606

---

Christopher Fiorentino,

Plaintiff,

-vs-

Commonwealth of Massachusetts and Massachusetts State Police Troopers Scott Gallant, Timothy Benedetto, and Derrek Deranian,

Defendants.

---

### COMPLAINT AND DEMAND FOR JURY TRIAL

1. "Time out! I'm getting out of the car! I'm getting out of the car!"

2. Plaintiff Christopher Fiorentino begged the Massachusetts State Police Troopers surrounding his vehicle to allow him to exit voluntarily.

3. "Hold on, guys, stop! Stop!" Trooper Peter Morawiak, speaking with Mr. Fiorentino through the smashed, rear, passenger's side window of Mr. Fiorentino's vehicle signaled to the Troopers on the other side of Mr. Fiorentino's vehicle to allow him to exit his vehicle willingly.

4. "Please! Please!" Mr. Fiorentino implored the Troopers to give him a moment to comply with their orders.

5. "Put your hands up on the roof!" Trooper Morawiak ordered Mr. Fiorentino.

6. "I got you," Mr. Fiorentino responded, putting his hands up and touching the ceiling just above his head inside his vehicle.

7. "Open the door! Open the door! Open the door! Get out of the car," Trooper Morawiak ordered Mr. Fiorentino.

8. He silently complied. Keeping his right hand on the ceiling, Mr. Fiorentino used his left to pull the latch of his front, driver's side door, and then pushed the door open.

9. "Get the fuck out of the car!" screamed one of the Troopers.

10. Just after Mr. Fiorentino pushed his door open, Defendant-Trooper Scott Gallant allowed his police dog to repeatedly bite Mr. Fiorentino's left arm, which he used to shield the rest of his body.

11. Defendant-Troopers Timothy Benedetto, Derrek Deranian, and Scott Gallant allowed Defendant-Trooper Gallant's police dog to attack and bite Mr. Fiorentino while they pulled him from the vehicle and threw him face-first onto the cold street.

## Jurisdiction and Venue

12. This Court has subject matter jurisdiction over all claims in this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

13. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391.

## Parties

14. Mr. Fiorentino is a resident of the Commonwealth of Massachusetts.

15. Massachusetts State Police ("MSP") Troopers Scott Gallant, Timothy Benedetto, and Derrek Deranian are law enforcement officers employed by MSP and the Commonwealth of Massachusetts. They acted at all relevant times as on-duty

Troopers. They are sued in their individual and personal capacities. Upon information and belief, they are residents of the Commonwealth of Massachusetts.

16. The Commonwealth of Massachusetts is one of the United States of America.

## Facts Alleged

17. At approximately 8:15 p.m. on Friday, March 17, 2023, Mr. Fiorentino was driving his grey Jeep Grand Cherokee north on Interstate 93 just south of Andover, Massachusetts.

18. As he was driving, he noticed a police cruiser behind his Jeep with its emergency lights and sirens engaged.

19. Unbeknownst to him at the time, the rear taillights of his vehicle were not properly operating.

20. Mr. Fiorentino began to panic for several reasons. First, he was experiencing several mental health conditions at the time. As a child, he was diagnosed with both post-traumatic stress disorder ("PTSD") and anxiety disorder. He received and was diagnosed with a traumatic brain injury ("TBI") in 2007 and 2011. He was again diagnosed with PTSD in 2021 based on trauma endured from a source separate from the trauma which led to his PTSD diagnosis as a child. Finally, he was diagnosed with post-concussion syndrome in 2022.

21. All these conditions brought themselves to bear when he saw the police cruiser behind him.

22. Additionally, unbeknownst to Defendants, Mr. Fiorentino was on probation and was operating his vehicle without a valid driver's license.

23. Realizing what he was facing and beginning to panic, Mr. Fiorentino called 911 and was connected to an MSP sergeant. He explained the situation to the sergeant—his medical conditions, probation, and driving without a license—and explained he was more than willing to turn himself in for a possible violation of probation.

24. The MSP sergeant instructed Mr. Fiorentino not to exit his vehicle under any circumstances. He would contact the Troopers in pursuit and instruct them to terminate the pursuit to allow Mr. Fiorentino to turn himself in.

25. The MSP sergeant contacted all Troopers in pursuit of Mr. Fiorentino, which included the Defendants, and instructed all of them to terminate their pursuit of the vehicle containing Mr. Fiorentino.

26. The Troopers, including the Defendants, ignored the order to terminate and continued to pursue Mr. Fiorentino's vehicle.

27. Eventually, Mr. Fiorentino stopped his vehicle on the side of Cardinal Lane in Andover, Massachusetts. Mr. Fiorentino had taken Exit 35 off Interstate-93 North, turned right onto Dascomb Road, and then right onto Cardinal Lane.

28. Shortly after he stopped, his vehicle was surrounded by approximately eight (8) Massachusetts State Police Cruisers and ten (10) Troopers, which included Defendants.

29. After stopping, Defendant-Trooper Timothy Benedetto exited his cruiser, drew his firearm, pointed it at Mr. Fiorentino, and began to scream orders at him to exit the vehicle.

- 4 -

30. Mr. Fiorentino had neither brandished a weapon nor threatened the Troopers in any way, nor did he do so at any point in his interaction with Defendants.

31. As Defendant-Trooper Benedetto pointed his firearm at Mr. Fiorentino and screamed orders at him, Defendant-Trooper Scott Gallant waited with his trained police dog just outside the rear, driver's side door of Mr. Fiorentino's vehicle.

32. Defendant-Trooper Derrek Deranian waited near the driver's side of Mr. Fiorentino's vehicle, observing what was happening and occasionally yelling orders at Mr. Fiorentino.

33. As the Defendants and other Troopers surrounded his vehicle, Mr. Fiorentino remained on the line with the MSP sergeant. The sergeant continued to instruct Mr. Fiorentino to stay in the vehicle as he continued to work on terminating the pursuit and stop of Mr. Fiorentino and his vehicle.

34. Meanwhile, the Defendants and Troopers on scene then began to force their way into Mr. Fiorentino's vehicle. They began violently pulling on all four (4) doors of the vehicle, all of which were locked. Next, they began smashing and clearing out the windows of the vehicle. They used this tactic with all but Mr. Fiorentino's front, driver's side window.

35. Realizing he could now attempt a conversation with the Troopers, Mr. Fiorentino made eye contact with Trooper Morawiak and began speaking with him.

36. "Time out! I'm getting out of the car! I'm getting out of the car!" cried Mr. Fiorentino.

37. "Hold on, guys, stop! Stop!" Trooper Morawiak, speaking with Mr. Fiorentino through the smashed, rear, passenger's side window of Mr. Fiorentino's vehicle, signaled to the Troopers on the other side of Mr. Fiorentino's vehicle to allow him to exit his vehicle willingly.

38. "Please! Please!" Mr. Fiorentino implored the Troopers to give him a moment to comply with their orders.

39. "Put your hands up on the roof!" Trooper Morawiak ordered Mr. Fiorentino.

40. "I got you," Mr. Fiorentino responded, putting his hands up and touching the ceiling just above his head inside his vehicle.

41. "Open the door! Open the door! Open the door! Get out of the car," Trooper Morawiak ordered Mr. Fiorentino.

42. He silently complied. Keeping his right hand on the ceiling, Mr. Fiorentino used his left to pull the latch of his front, driver's side door, and then pushed the door open.

43. "Get the fuck out of the car!" screamed one of the Troopers.

44. Just after Mr. Fiorentino pushed his door open, Defendant-Trooper Gallant allowed his police dog to repeatedly bite Mr. Fiorentino's left arm, which he used to shield the rest of his body.

45. Defendant-Troopers Benedetto, Deranian, and Gallant were within inches of both Mr. Fiorentino and the police dog when the police dog bit Mr. Forentino's arm, and they allowed Defendant-Trooper Gallant's police dog to attack and bite Mr. Fiorentino.

46. After allowing the police dog to attack Mr. Fiorentino for approximately twenty (20) seconds, Defendant-Troopers Benedetto, Deranian, and Gallant pulled him from the vehicle and threw him face-first onto the cold street. The police dog continued to attack him.

47. As Defendants pulled Mr. Fiorentino from the vehicle and threw him face-first onto the street, Mr. Fiorentino screamed in pain. The police dog had inflicted and was continuing to inflict extreme trauma on his left forearm, so extreme Mr. Fiorentino would require numerous stitches and medical interventions to heal from the attack. The attack resulted in structural and nerve damage to Mr. Fiorentino's arm which he will endure for the rest of his life.

48. As Mr. Fiorentino was screaming and writhing in pain on the street, Defendants all pinned him down with their full weight and handcuffed him. Defendant-Trooper Benedetto placed his right knee and full weight on the back of Mr. Fiorentino's upper-back-and-neck area.

49. After he was attacked and handcuffed, Mr. Fiorentino told all the Troopers present, including the Defendants, that he needed to go to the hospital because he was having an anxiety attack. One of the Trooper responded, "we're here to help you."

50. Later, in a conversation with another Trooper, Defendant-Trooper Gallant acknowledges he heard the order to terminate but that it was "too late" once Mr. Fiorentino had stopped on the side of Carinal Lane.

51. Defendant-Trooper Gallant also later explained that he had "no clue" whether Mr. Fiorentino had a weapon, he "just sent the dog."

## Count 1
### Excessive force under 42 U.S.C. § 1983 against the Defendant-Troopers

52. Mr. Fiorentino incorporates by reference all prior paragraphs.

53. During all events described on the evening of March 17, 2023, the Defendant-Troopers were acting under color of state law as on-duty MSP Troopers.

54. The Defendant-Troopers used force on Mr. Fiorentino which was unreasonable under all the circumstances.

55. As a result of the Defendant-Troopers' use of excessive force, Mr. Fiorentino was denied his rights as guaranteed under the Fourth Amendment to the Constitution of the United States.

## Count 2
### Excessive force under G.L. c. 12, § 11I, against the Defendant-Troopers

56. Mr. Fiorentino incorporates by reference all prior paragraphs.

57. During all events described on the evening of March 17, 2023, the Defendant-Troopers were acting under color of state law as on-duty MSP Troopers.

58. The Defendant-Troopers used force on Mr. Fiorentino which was unreasonable under all the circumstances.

59. Consequently, the Defendant-Troopers interfered with or attempted to interfere with Mr. Fiorentino's exercise and enjoyment of rights as guaranteed under the Constitution of the United States and the Constitution of the Commonwealth of Massachusetts.

## Count 3
### Fourth Amendment violation under 42 U.S.C. § 1983 against the Defendant-Troopers

60. Mr. Fiorentino incorporates by reference all prior paragraphs.

61. During all events described on the evening of March 17, 2023, the Defendant-Troopers were acting under color of state law as on-duty MSP Troopers.

62. As a result of the Defendant-Troopers' actions, Mr. Fiorentino was denied his rights as guaranteed under the Fourth Amendment to the Constitution of the United States.

## Count 4
### Article XIV violation under G.L. c. 12, § 11I, against the Defendant-Troopers

63. Mr. Fiorentino incorporates by reference all prior paragraphs.

64. During all events described on the evening of March 17, 2023, the Defendant-Troopers were acting under color of state law as on-duty MSP Troopers.

65. As a result of the Defendant-Troopers' actions, Mr. Fiorentino was denied his rights as guaranteed under Article XIV of the Massachusetts Declaration of Rights.

## Count 5
### Assault and battery against the Defendant-Troopers

66. Mr. Fiorentino incorporates by reference all prior paragraphs.

67. The Defendant-Troopers intended to cause harmful or offensive contact with Mr. Fiorentino.

68. A harmful or offensive contact of Mr. Fiorentino directly or indirectly resulted from the Defendant-Troopers' actions and intent.

## Count 6
**Intentional infliction of emotional distress against the Defendant-Troopers**

69. Mr. Fiorentino incorporates by reference all prior paragraphs.

70. The Defendant-Troopers intended to inflict emotional distress on Mr. Fiorentino or knew or should have known that emotional distress was likely to result. The Defendant-Troopers' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized society. The Defendant-Troopers caused Mr. Fiorentino's emotional distress.

71. Mr. Fiorentino suffered severe emotional distress of a nature that no reasonable person could be expected to endure it.

72. Specifically, in the year since he was attacked, Mr. Fiorentino has endured daily, intense physical and emotional pain. Trauma resulting from the attack combined with the daily physical and emotional pain has negatively affected Mr. Fiorentino's physical and mental health and resulted in intense pain and suffering. He has endured intense anxiety, depression, stress, and physical and emotional pain. He has had difficulty sleeping, eating, working, and socializing. And he has sought and received long-term physical and mental health treatment.

## Count 7
**Negligent infliction of emotional distress against the Commonwealth**

73. Mr. Fiorentino incorporates by reference all prior paragraphs.

74. The Defendant-Troopers owed a duty of care to Mr. Fiorentino.

75. The Defendant-Troopers breached that duty.

76. Mr. Fiorentino was assaulted and battered and had his rights violated because of the Defendant-Troopers' breach of duty.

77. The Defendant-Troopers' breach of duty caused Mr. Fiorentino emotional distress.

78. Mr. Fiorentino's emotional distress caused him to suffer physical harm.

79. Specifically, in the year since he was attacked, Mr. Fiorentino has endured daily, intense physical and emotional pain. Trauma resulting from the attack combined with the daily physical and emotional pain has negatively affected Mr. Fiorentino's physical and mental health and resulted in intense pain and suffering. He has endured intense anxiety, depression, stress, and physical and emotional pain. He has had difficulty sleeping, eating, working, and socializing. And he has sought and received long-term physical and mental health treatment.

80. A reasonable person in Mr. Fiorentino's position would also have experienced emotional distress.

## Count 8
### Coercive common law conspiracy against all Defendants

81. Mr. Fiorentino incorporates by reference all prior paragraphs.

82. Defendants acted in unison with a peculiar power of coercion over Mr. Fiorentino which they would not have had if they were acting individually.

## Count 9
### *Monell* claim against the Commonwealth for an official policy or custom

83. Mr. Fiorentino incorporates by reference all prior paragraphs.

84. The Commonwealth has official policies or customs in place.

85. The policies or customs amounted to deliberate indifference to the rights of the persons with whom the Defendant-Troopers came into contact.

86. The Defendant-Troopers acted pursuant to these official policies or customs.

87. Mr. Fiorentino was harmed and deprived of his constitutional rights as a result.

### Count 10
### *Monell* claim against the Commonwealth for failure to train or supervise

88. Mr. Fiorentino incorporates by reference all prior paragraphs.

89. The Commonwealth both failed to properly train and/or supervise the Defendant-Troopers.

90. The failure to properly train and/or supervise amounted to deliberate indifference to the rights of the persons with whom the Defendant-Troopers came into contact.

91. The Defendant-Troopers acted without proper training and/or supervision.

92. Mr. Fiorentino was harmed and deprived of his constitutional rights as a result.

### Count 11
### Failure to train or supervise against the Commonwealth under
### G.L. c. 258, § 2

93. Mr. Fiorentino incorporates by reference all prior paragraphs.

94. The Commonwealth both failed to properly train and/or supervise the Defendant-Troopers.

95. The failure to properly train and/or supervise amounted to deliberate indifference to the rights of the persons with whom the Defendant-Troopers came into contact.

96. The Defendant-Troopers acted without proper training and/or supervision.

97. Mr. Fiorentino was harmed and deprived of his constitutional rights as a result.

98. WHEREFORE, Mr. Fiorentino respectfully requests the Court grant the following forms of relief:

a. Enter judgment in favor of Mr. Fiorentino and against the Defendants on all counts of the Complaint;

b. Award compensatory and punitive damages in an amount to be determined by a jury;

c. Award Mr. Fiorentino attorneys' fees, costs, and interest as permitted by law; and

d. Grant such further and other relief as may be just and proper.

## Demand for Jury Trial

99. Mr. Fiorentino demands a trial by jury on all claims and issues.

Dated:        October 11, 2024
              Boston, Massachusetts

                                        Respectfully submitted,

                                        Joshua O'Neill, Esq.
                                        BBO# 704512
                                        617.356.7784
                                        josh@bostondefender.com

                                        The Boston Defender
                                        www.bostondefender.com
                                        100 Cambridge Street
                                        14th Floor
                                        Boston, MA 02114

- 14 -